## O'Donnell, Appellant, *v.* Gaffney.

*Will—Donatio mortis causa—Certificates of stock.*

Under the law of Pennsylvania, a valid donatio mortis causa may be made of certificates of railway stock by a delivery of them to the donee without assignment or indorsement in writing.

*Appeals—Assignments of error—Practice, C. P.*

An assignment of error to the effect that the trial judge did not present the evidence of one party as fully as he did that of the other party, and that he omitted reading certain essential evidence, will not be sustained where counsel did not at the trial call the court's attention to the alleged omission.

Argued Oct. 23, 1902.  Appeal, No. 100, Oct. T., 1902, by plaintiff, from judgment of C. P. No. 3, Phila. Co., Sept. T.; 1900, No. 433, on verdict for defendant in case of William A. O'Donnell, Administrator, v. Margaret Gaffney.  Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.  Affirmed.

Trespass in the nature of trover and conversion.  Before McCARTHY, J.

At the trial it appeared that the action was brought by William A. O'Donnell, administrator of Bridget Darragh, to recover from defendant thirteen shares of stock of the Union Traction Company which the defendant claimed by gift donatio mortis causa.  The defendant was the sister of Mrs. Darragh.  The evidence tended to show that shortly before Mrs. Darragh's death she gave to her sister the shares of stock, saying, "These are yours.  I give them to you."  She also stated that she realized that she was going to die.

Defendant presented these points :

1. Under the law of Pennsylvania, a valid donatio mortis causa may be made of certificates of railway stock by a delivery of them to the donee without assignment or indorsement in writing : Com. v. Compton, 137 Pa. 138, and cases cited ; Walsh v. Sexton, 55 Barb. 251.  *Answer :* Affirmed. [1]

2. Gifts of the nature you are considering are usually made as was this one, in the last sickness and in contemplation of death, and therefore it is that mere feebleness of intellect and bodily weakness are insufficient to render such gifts void.  The test is, Did the person making the gift have sufficient understanding or mental capacity to comprehend the nature and effect of what she was doing at the time she made the gift?  Dornick v. Reichenback, 10 S. & R. 84 ; Leech v. Leech, 21 Pa. 67 ; Eckert v. Flowry, 43 Pa. 46 ; Englert v. Englert, 198 Pa. 326.  *Answer :* Affirmed. [2]

3. In judging of the mental capacity of the deceased in this case, you are to direct your attention to the time when the gift was made.  This is the point of time to be looked at by you, and at which the mental capacity of the decedent is to be tested ; and if you believe that at the time she made the gift she had sufficient understanding to know what she was doing, that is, to understand the nature and effect of the gift she was mak-

ing of the stock, to her sister, this is all that was necessary, even though she was physically sick and infirm and her mind was weak and enfeebled: Egbert v. Egbert, 78 Pa. 326. *Answer :* Affirmed. [3]

4. If you believe that at the time the decedent gave this stock to her sister, she had sufficient understanding to know what she was doing, that is, that she was making a gift to her sister and that this gift was of her traction stock, then such gift cannot be avoided or invalidated, even though in the opinion of some of the witnesses, including the doctor, the decedent's mind was unsound or flighty or wandering or torpid when they saw her: Egbert v. Egbert, supra; Palmer's Estate, 5 W. N. C. 542 ; McMasters v. Blair, 29 Pa. 298. *Answer :* Affirmed. [4]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1–4) answers to points; (6) in presenting the defendant's evidence by reading only the evidence in chief of the defendant and her daughter ; (7) in not adverting to the contradictions of the defendant's evidence in chief and her cross-examination ; (8) in not adverting to the contradictions of the evidence in chief and cross-examination of the defendant's daughter, Annie Yerger ; (9) in not with equal fullness presenting the case of the plaintiff as that of the defendant ; (10) in not calling the attention of the jury to the character of evidence required to support gifts donatio mortis causa.

*William A. O'Donnell* and *M. J. O'Callaghan*, for appellant.

*John C. Bell*, for appellee.

OPINION BY BEAVER, J., March 12, 1903 :

We have just considered, in Hawn v. Stoler, Exr., ante, p. 307, the elements which enter into and the conditions under which a valid donatio mortis causa may be made.. It is not necessary to repeat them here.

The assignments of error relate to the answers of the trial judge to the several points of charge submitted by the defendant and embody complaints of a very general character as to what the court did not do.   The points of charge submitted by

the defendant numbered ten in all. Six were affirmed and four declined. The assignments of error relate to the affirmance by the trial judge in the court below of the first, second, third, fourth and ninth points of charge. The sixth, which was affirmed, is not assigned for error. The others were all declined.

It is probably enough to say that the points affirmed were presented with a brief of the authorities which abundantly sustain them. If they are so printed in the report of the case, there is no necessity for repeating the authorities here. Other Pennsylvania authorities might be added as to several of the propositions involved, but we do not think it necessary to enter upon the general discussion of them. As remarked in Hawn v. Stoler, supra, there is an exhaustive discussion of the general subject of donatio mortis causa in 1 Bouvier's Law Dictionary, Rawle's Revision, 606, an examination of which, together with the authorities quoted by the appellee here, fully justify the rulings of the court below.

The other assignments of error are so general in their character and for the most part relate to what the court did not do, that it is scarcely necessary to notice them seriatim. The sixth alleges that "the court erred in presenting the defendant's evidence by reading only the evidence in chief of the defendant and her daughter." That testimony constituted the pinch of the case. It was essentially necessary to read that to the jury to enable them to determine what was involved in the defense. If the court omitted anything, it was the privilege of the appellant's counsel to call the attention of the court to the omission, and it is only fair to say that this privilege was freely exercised in the course of the charge. As appears in the stenographer's notes, " Mr. O'Callaghan requested the court to call the jury's attention to the testimony of Mr. Darragh as to the conversation with the defendant on the subject of the finding of the stock, and following testimony of Thomas Darragh was read from the stenographic notes." Then follows the testimony, the court remarking: " That, of course, gentlemen, is proper for you to consider,—the testimony of all these witnesses and the testimony of Mr. Darragh. I call your attention, without expressing any opinion one way or the other about it, to the fact that Mrs. Gaffney said there was no such conversation." If

there were other omissions, the same course was open to and should have been adopted by the appellant.

The case was well tried, the charge of the court was full, exhaustive, and, so far as we can see, fair. We think the verdict was justified by the evidence.

Judgment affirmed.