Kinsinger v. Keasbey & Mattison Co.

*Russell J. Brownback* and *E. C. Shapley Highley,* for plaintiffs.

*Marlyn F. Smith, High, Swartz, Childs & Roberts,* and *Alexander N. Rubin, Jr., Goff & Rubin,* for defendant.

DANNEHOWER, P. J., February 25, 1960.—Joseph F. Kinsinger, trading as Fleming Elevator Company, filed a mechanics' lien claim and issued a sci. fa. against the ground and curtilage appurtenant thereto of Keasbey & Mattison Company, Ambler. The claim in the amount of $2,009.18 arises out of a contract to install electrical controls in two gates and in convert-

ing hand controls to automatic controls in a fence surrounding the property of Keasbey & Mattison. Claimant was a subcontractor under A. C. Baker Fences, Inc., which had the prime contract to erect a fence. A dispute arose between claimant, the subcontractor, and A. C. Baker Fences, Inc., the prime contractor, and the claim was not paid. Admittedly, Keasbey & Mattison was not a party to the contract.

Keasbey & Mattison filed this demurrer contending that a mechanics' lien is not allowed for fencing and the claim is defective because the property is not adequately described and does not set forth the dates when labor and materials were furnished. After argument before the court en banc, the matter is now pending for decision.

Article 3, section 7, of the Constitution of the Commonwealth provides in part:

"The General Assembly shall not pass any local or special law: Authorizing the creation, extension or impairing of liens; . . . or providing or changing methods for the collection of debts, . . ."

As authority for filing this lien, claimant relies on the Act of June 4, 1901, P. L. 431, sec. 2, 49 PS §21, which provides:

"Every structure or other improvement, and the curtilage appurtenant thereto, shall be subject to a lien for the payment of all debts due to the contractor or sub-contractor in the erection and construction . . . thereof, in the addition thereto and in the alteration and repair thereof and of the . . . fences, . . . or other enclosure belonging to said structure."

On first blush it might appear that claimant is correct in his contention. However, the provisions in the Act of 1901 must be examined in light of the constitutional provisions supra. We must decide whether a mechanic's lien on fences existed prior to 1874 when our Constitution was adopted.

The Act of June 16, 1836, P. L. 695, sec. 1, provided that "every building erected within the several counties of this Commonwealth . . . shall be subject to a lien for the payment of all debts contracted for work done, or materials furnished, for, or about the erection and construction of same."

This act was always strictly construed and numerous acts were subsequently passed in order to extend the right of lien for paperhanging, plumbing, gas fitting, etc., but no act prior to the adoption of the Constitution in 1874 extended the right of lien to persons furnishing material and labor for the construction of fences.

Claimant has cited cases as authority for the proposition that prior to 1874, in certain cases, a lien for fencing existed. In support of this contention, claimant cited Gaule v. Bilyeau, 25 Pa. 521 (1855), and Ermentrout's Account, 1 Woodward 158 (1863).

The Gaule case involved a lien on lumber furnished for the building of a tavern and certain outbuildings including a fence. The court allowed the lien to stand. We do not quarrel with this ruling, but we do not agree that this decision established a precedent allowing a mechanic's lien on a contract for the erection of fences only. The Ermentrout case, supra, involved a fence built in 1860 and a house, built in 1861, the lien was filed including work and materials furnished in building the house and also the fence. In the opinion the court said:

". . . the case of Gaule v. Bilyeau, 1 Casey, 521, might sustain a charge for building a fence as part of one general contract for the erection of a building on a lot, yet it would be straining its construction most unwarrantably to treat it as authority for letting in a claim of this kind upon a separate and independent contract."

We agree with claimant that language in early decisions would indicate that a mechanic's lien might be allowed for fencing if it were included in the contract for building the house and was an integral part of the house. In the case of Miller v. Heath, 22 Pa. Superior Ct. 316, the court said:

". . . This lien is filed under the act of 1836, and it is not necessary to decide whether the Statute gave a lien for fencing, the plaintiff having failed to properly assert a right to such a lien in his claim as filed. *The fence enclosing a lot is not an integral part of the dwelling house thereon erected, and as the work in this case was not done under an entire contract,* and the plaintiff having full knowledge of the proposed destination of his material, the right to a lien for a fence not having been properly asserted . . . the plaintiff was not entitled to recover: . . ." (Italics supplied)

It becomes clear after an examination of the cases and statutes that a mechanic's lien for fencing was never sustained in the Commonwealth prior to 1874. Although dicta in some early cases indicated that the courts might have honored a lien for fencing when the fencing was an integral part of the building and under an entire contract, however, we were unable to find any cases where such a lien was actually allowed on a contract for the construction of fences only.

Although it would appear from a reading of the Act of 1901 that a lien for fencing is allowed; if this be true, such provision is in conflict with article III, section 7, of the Constitution. On this point the case of Parkhill v. Hendricks, 53 Pa. Superior Ct. 9, 15-16, is controlling. In that opinion, the court stated, in part:

". . . the above section of the Constitution . . . clearly forbids the extension of the rights and privileges of a special class of creditors with respect to the collection of other special classes of debts.

If, in fact, a mechanic's lien for fencing did not exist prior to 1874, then that provision in the Act of 1901 allowing liens for fences is in conflict with the Constitution and is, therefore, unconstitutional.

We, therefore, must decide that the installation of electrical controls in a fence for the opening and closing of two gates therein is not the proper subject of a mechanic's lien against the structure and curtilage appurtenant thereto, which building had been erected some substantial time before. Claimant must resort to an action in assumpsit in order to recover.

Since the lien must be stricken off for the reason stated hereinabove, we do not deem it necessary to consider the other points raised in the demurrer.

### Order

And now, February 25, 1960, the demurrer to the scire facias sur mechanic's lien is sustained, the sci. fa. is dismissed and the prothonotary is directed to strike off the mechanic's lien claim.